*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAULO ALEX MACHADO CARNEIRO,

        Plaintiff/Counterdefendant-Appellee,

v

CAROLINE SANTOS DA SILVA CARNEIRO,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
July 18, 2024

Nos. 366974; 367645; 368672
Ingham Circuit Court
Family Division
LC No. 18-003408-DM

Before: RIORDAN, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Defendant/counterplaintiff-appellant, Caroline Santos Da Silva Carneiro (defendant), appeals as of right three orders issued in 2023. In the first order, the court, in connection with defendant's divorce from plaintiff/counterdefendant-appellee, Paulo Alex Machado Carneiro (plaintiff), granted plaintiff permission to move the parties' minor daughter, EC, to Brazil. In the second order, the court set forth a specific parenting-time schedule. In the third order, the court denied defendant's request to revisit the custody decision. We affirm.

## I. FACTUAL BACKGROUND

The parties were married in Brazil in 2012. They moved to East Lansing in 2015 so that plaintiff could pursue a Ph.D. at Michigan State University (MSU). The schooling was paid for by the Brazilian government, with the understanding that plaintiff would have to return to Brazil to work for several years. If he did not do so, he would owe a substantial amount of money to the government. In 2018, plaintiff filed for divorce after discovering that defendant was having an affair. During the divorce proceedings, the parties each had custody of EC on an interim, every-other-week basis. However, defendant made physical and sexual abuse allegations against plaintiff that resulted in his inability to exercise his parenting time for substantial periods. The abuse allegations were not substantiated and the trial court concluded that defendant had fabricated them. Plaintiff asserted that defendant was advancing a narrative of abuse so that she could remain in the United States under a program allowing for victims of domestic violence to live in the country. Plaintiff wanted to return to Brazil in order to be free from his educational debt and because he had an established career there.

-1-

After a lengthy bench trial, the trial court concluded that both parties were closely bonded with EC and that she had an established custodial environment (ECE) with each of them. The court further ruled that EC would attend school in Brazil, the parties would have joint legal custody, and defendant would have substantial parenting time. Relevant to this appeal, the court also determined that defendant was not entitled to spousal support, but awarded her $11,193.88 in attorney fees, to be paid by plaintiff. This appeal followed.

## II. CUSTODY AND CHANGE-OF-DOMICILE DECISIONS

### A. STANDARDS OF REVIEW

Under MCL 722.28, this Court will affirm the trial court's custody orders and judgments "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." Generally, three separate standards of review apply in child custody proceedings:

> The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [*Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003) (quotation marks and citations omitted).]

"A trial court's determination on a request for a change of legal residence for a minor child is reviewed by this Court for an abuse of discretion and the trial court's findings are reviewed under the great weight of the evidence standard." *Grew v Knox*, 265 Mich App 333, 339; 694 NW2d 772 (2005). This Court also evaluates a trial court's ruling as to "whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009).

### B. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant first contends that the trial court erred by concluding that EC had an ECE with both parents. "[W]hen there is an established custodial environment with both parents, neither parent's established custodial environment may be disrupted except on a showing, by clear and convincing evidence, that such a disruption is in the children's best interests." *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362488); slip op at 17 (quotation marks and citation omitted). As an initial matter, defendant concedes that the court applied a clear-and-convincing-evidence standard because allowing plaintiff to move EC to Brazil would alter her ECE. Defendant nevertheless claims that correcting the allegedly erroneous ECE decision is necessary because a ruling that the ECE was solely with defendant would somehow change the analysis of the various statutory factors. This is an entirely unsupported assertion, as the court analyzed the statutory factors on the basis of the evidence presented. Even if there was merit to

defendant's argument, the court's ECE decision was not against the great weight of the evidence. MCL 722.27(1)(c) states, in pertinent part:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

The parties previously had a week on/week off custody arrangement, and before that, EC lived with both parents in a unified household. Contrary to defendant's implication, there was plenty of evidence that EC was strongly bonded to plaintiff and that he was as involved in her raising as defendant was. Thus, the trial court's ruling that EC had an ECE with both parents was not against the great weight of the evidence.

### C. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES—BENCH TRIAL

Defendant next contends that there was no proper cause or a change of circumstances to allow either party to seek to modify custody. MCL 722.27(1)(c) states that a court may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances[.]" In *Kuebler*, ___ Mich App at ___; slip op at 16, this Court explained:

> To establish a change of circumstances sufficient for a court to consider modifying a custody order, the movant must prove by a preponderance of the evidence that since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed. [T]he evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. [T]o establish proper cause necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. As is the case with a change of circumstances, [t]he appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being. [Quotation marks and citations omitted; alterations in original.]

Caselaw indicates, however, that the proper-cause-or-change-of-circumstances threshold set forth in MCL 722.27(1)(c) does not apply to an initial judgment awarding custody after trial, even though the trial court may already have entered a temporary order governing custody and parenting time. See *Thompson v Thompson*, 261 Mich App 353, 359-362; 683 NW2d 250 (2004). In *Thompson*, *id*. at 361-362, this Court explained:

> A custody award may be modified or amended on a showing of proper cause or a change of circumstances that establishes that the modification is in the child's best interest. But the trial court in the present case had not awarded custody before the trial. MCL 722.27(1)(a) provides that in the best interest of the child, a trial

court may award custody to one of the parties involved. The trial court, in an original action, awarded physical custody to defendant during the school year and to plaintiff during the summer. But MCL 722.27(1)(c) still applies except for the part referring to modifications and amendments. The first sentence of MCL 722.27(1)(c) only refers to when a party is attempting to "[m]odify or amend," while the second sentence mandates that the trial court not "modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." In light of the clear intention of the Legislature, the first sentence of . . . MCL 722.27(1)(c) does not apply [to] the trial court's initial or "new" custody order in this matter. The trial court's award of custody was not a modification or amendment; it was a new order that is only subject to the limitation provided in the second sentence of MCL 722.27(1)(c). As such, the requirement to show proper cause or change of circumstances does not apply to the trial court's initial award of custody in the present case. [*Id*. at 361-362 (citations and parenthetical notations omitted).]

This reasoning applies to the present case, given that the court was rendering its first posttrial custody decision. As such, defendant's argument about proper cause or a change of circumstances is misplaced.

## D. BEST-INTERESTS FACTORS

Defendant makes a series of arguments about the court's findings concerning the best-interests factors set forth under MCL 722.23. We will address each of them in turn.

Defendant first takes issue with the court's finding as to factor (b), regarding "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The court found that factor (b) slightly favored defendant, stating that defendant had been "more in charge of [EC]'s educational needs and extracurricular activities." Defendant contends that the court should have found that factor (b) fully favored her because she was more involved with EC and took EC to church, and plaintiff committed domestic abuse.

The court's finding was not against the great weight of the evidence. There was ample evidence that *both* parents were very bonded with EC, loved her deeply, and provided her with guidance. Both parents sought to teach EC about her Brazilian heritage and maintain her connections to her culture, although defendant was more responsible for EC's educational and religious needs than plaintiff. As for defendant's domestic-abuse argument, the court clearly concluded that defendant's allegations were not credible. "This Court defers to a trial court's findings of fact stemming from credibility determinations," *Cassidy v Cassidy*, 318 Mich App 463, 477; 899 NW2d 65 (2017), and at any rate, the record contains an ample basis for the court to have doubted the veracity of the abuse allegations. The court's finding that defendant should be slightly favored under factor (b) was appropriate.

Defendant next takes issue with the court's finding under factor (c), regarding "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical

care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The court found that factor (c) slightly favored plaintiff, who had an established career in Brazil and had been the family's main provider. The court also stated that defendant claimed that she was unable to work in a job with regular income because of her immigration issues. Citing *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008), she contends that the court placed too much emphasis on plaintiff's income when analyzing this factor and that the court should have found that defendant was favored under this factor or that the parties were equal. In *Berger*, *id*., the Court stated:

> Factor c does not contemplate which party earns more money; it is intended to evaluate the parties' *capacity* and *disposition* to provide for the children's material and medical needs. Thus, this factor looks to the future, not to which party earned more money at the time of trial, or which party historically has been the family's main source of income.

It is true that the court referred to plaintiff's history as the primary breadwinner. Importantly, however, the court also considered which party had a greater capacity in general to provide for EC's needs, and concluded that plaintiff had the greater capacity. The court correctly noted that defendant's employment situation was less than favorable because she wanted to remain in the United States and had immigration issues, whereas plaintiff was planning to return to his established career in Brazil. The court's finding on factor (c) was therefore not against the great weight of the evidence.[1]

Defendant also takes issue with the court's finding under factor (d), which addresses "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The court concluded that the parties were equal under this factor, but defendant contends that the court should have found that this factor weighed in her favor. Her argument is merely "based on her steady care of EC." We find this argument unpersuasive. Both parties provided continual care to EC. Also, while it is true that plaintiff was planning to move EC to Brazil when the parties' permanent home had been in the United States, defendant had subjected EC to an unstable environment by moving in with a new boyfriend who had a history of serious issues with alcohol. The court's finding on factor (d) was not against the great weight of the evidence.

Defendant also contends that factor (e), concerning "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes[,]" MCL 722.23(e), should have been weighed in her favor. The court found that factor (e) favored plaintiff because he was intending to move to Brazil, where EC had a large extended family, whereas no extended family lived in the United States or visited defendant in the United States. Defendant argues that the court's finding in favor of plaintiff was based on speculation because there was no indication that plaintiff would foster a continuing relationship between EC and both sides of her family. In *Ireland v Ireland*, 451 Mich

---

[1] Defendant also mentions domestic abuse in connection with this factor, but as noted, the court found the allegations of abuse were not credible.

457, 465; 547 NW2d 686 (1996), the Court stated, "[W]e are satisfied that the focus of factor e is the child's prospects for a stable family environment." The *Ireland* Court added:

> The stability of a child's home can be undermined in various ways. This might include frequent moves to unfamiliar settings, a succession of persons residing in the home, live-in romantic companions for the custodial parent, or other potential disruptions. Of course, every situation needs to be examined individually. [*Id*. at 465 n 9.]

*Ireland* did not refer to a child's association with extended family members, but the Court did speak of "the child's prospects for a stable family environment," *id*. at 465, and noted that individual circumstances were important. EC's entire extended family from both sides lives in Brazil. EC had been to Brazil several times. Plaintiff explained the various family members that EC knew and said that EC maintained contact with them electronically. It was not unreasonable for the court to conclude that having extended family members in close proximity would enhance EC's sense of stability. In addition, defendant's living situation was not set in stone because she had not yet decided whether she was going to be moving in with her new boyfriend. The court's finding on factor (e) was thus not against the great weight of the evidence.

Defendant also claims that the court should not have found that factor (f) favored plaintiff. Factor (f) concerns "[t]he moral fitness of the parties involved." MCL 722.23(f). The court found that factor (f) slightly favored plaintiff, stating that defendant began an affair with another man while still married to plaintiff and quickly introduced him into EC's life despite his history of serious problems with alcohol. The court noted that defendant intended to stay in a relationship with the new boyfriend and that EC said that she disliked when defendant's boyfriend touched her. The court also noted that defendant had made many serious allegations of abuse against plaintiff, none of which had been substantiated. The court's statements are all supported by record evidence. Moreover, defendant's unfounded allegations against plaintiff were detrimental to EC and subjected her to unnecessary interviews and examinations. See *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994) (stating that "questionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent*."). We find no error in connection with factor (f).

Defendant contends that the trial court erroneously failed to make a finding under factor (h), regarding "[t]he home, school, and community record of the child." MCL 722.23(h). It is evident from context, however, that the court was weighing this factor neutrally, because the court stated that EC had been living with defendant and plaintiff on a biweekly schedule since 2019 and was doing very well at home, at school, and in the community. Defendant contends that she should have been favored under this factor, but the evidence showed that EC was doing well with each parent. No error is apparent with regard to factor (h).

The court likewise concluded that the parties were equal under factor (j), regarding each parent's willingness "to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The court observed that plaintiff interfered with defendant's parenting time to some extent, but that defendant had made many false allegations against plaintiff. This resulted in a loss of parenting time for plaintiff and confusion to EC, who had a strong and close relationship with plaintiff. Defendant

contends that the court did not address the second part of the factor, which states that "[a] court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent." MCL 722.23(j). However, contrary to defendant's argument, the court *did* consider this language; it simply found that defendant's allegations of abuse were not credible. The court's finding under factor (j) were therefore not against the great weight of the evidence.

Defendant also claims that the court erred in finding that factor (k), which pertains to domestic violence, should be weighed in her favor. See MCL 722.23(k). The trial court stated that this factor favored neither party. Defendant contends that this finding was improper because of the evidence of plaintiff's controlling and abusive behavior. As stated, however, the court did not believe defendant's allegations of abuse, and the record provides ample evidence that the allegations were never substantiated.

Finally, defendant claims that the court failed to make a finding under factor (*l*), concerning "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). With regard to factor (*l*), the court merely stated that all EC's relatives aside from defendant reside in Brazil. It is evident from context that the court favored plaintiff on this factor. Defendant also contends that the court's finding, such as it was, was speculative. But it is not in dispute that all of EC's relatives aside from defendant live in Brazil. No error is apparent.

### E. CHANGE-OF-DOMICILE FACTORS

Defendant also takes issue with several findings regarding the change-of-domicile factors. With regard to change-of-domicile factor (a), which addresses "[w]hether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent[,]" MCL 722.31(4)(a), the court noted that all of EC's relatives lived in Brazil. It further observed that plaintiff's long-term career, his soon-to-be-available pension, the discharge of his educational loans, and the lower cost of living in Brazil would provide EC a high quality of life. The court also noted that if EC moved to Brazil she would be closer to her extended family and would be raised in her native culture. The court further stated that defendant was making a low salary as a delivery driver.

Defendant contends that the court's finding under this factor was improper because EC would have more time with both parents if she lived in Michigan, and because the court made speculations about EC's potential relationships with her extended family members. The court's finding under factor (a) was not against the great weight of the evidence. Plaintiff said that he could offer EC a better quality of life and better schooling in Brazil than in the United States. He explained that his salary as a tenured professor in Brazil is considered very good. Plaintiff explained that EC would have a similar school routine as she currently has and that he would have time to spend with her because he is well established in his career in Brazil and would not have to work overtime. Plaintiff additionally stated that EC's entire extended family from both sides was in Brazil, that she knows them and maintains contact with them electronically. No error is apparent with regard to the court's finding regarding factor (a).

Defendant next contends that the court's finding under factor (b) was improper. Factor (b) addresses each parent's ability to "compl[y] with, and utilize[] his or her time under, a court order

governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule." MCL 722.31(4)(b). The court stated that both parties had interfered with the other's parenting times but that defendant's interference had been "much more egregious." This finding has ample record support, given that defendant's false allegations against plaintiff resulted in a substantial loss of parenting time.

Defendant further contends that the court's finding under factor (c) was improper. Factor (c) addresses

> [t]he degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification. [MCL 722.31(4)(c).]

The court stated that plaintiff was proposing that defendant receive parenting time for summers and school holidays. The court also noted that online visitations were possible. Defendant takes issue with the court's findings because the Brazilian school calendar does not leave much time for defendant to spend with EC.[2] The court's schedule allowed for 14 weeks of parenting time for defendant, with a total of "158 days of potential visitation" when additional days were considered. The court stated that it was satisfied that, given EC's age, various modifications could foster the parental relationship between defendant and EC if EC moved to Brazil. Thus, defendant's argument that the trial court granted "hardly any time for the child to be with her mother" is not accurate.

Defendant next challenges the court's finding under factor (d), which addresses "[t]he extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation." MCL 722.31(4)(d). The court indicated that it appeared that defendant sought to keep EC in the United States so that she could continue to receive child support, but that this was not her sole motivation. Defendant contends that "[t]he trial court emphasized the financial benefits to plaintiff in moving to Brazil" and that "the focus should be what is in the best interests of the child." Defendant has not accurately characterized the court's finding under factor (d). The court did not emphasize the financial benefits to plaintiff in moving to Brazil but instead mentioned the improper false accusations defendant had made against plaintiff and concluded that defendant's motivations were somewhat suspect. No error is apparent in connection with this factor.

Lastly, defendant contends that factor (e) was improperly weighed. This factor concerns domestic violence. MCL 722.31(4)(e). The court stated that both parties had made accusations against each other, but that the accusations were from years ago and the parents had been sharing

---

[2] Defendant also argues that plaintiff, in Brazil, is interfering with the custodial arrangement. The latter argument pertains to alleged actions that took place *after* the court made its findings and will be addressed *infra*.

equal time with EC for years. Defendant repeats her argument that plaintiff was domestically violent, but once again, the court did not find that allegation credible.

Ultimately, defendant has not established that any of the court's findings under the various factors were against the great weight of the evidence. The court did not abuse it discretion in its custody decision or its change-of-domicile decision.

## F. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES—DEFENDANT'S EMERGENCY MOTION

Defendant next contends that the trial court erred by not holding an evidentiary hearing in relation to an emergency motion she filed following trial, after plaintiff moved EC to Brazil. In *Barretta v Zhitkov*, ___ Mich App___, ___; ___ NW3d ___ (2023) (Docket Nos. 364921 and 365078); slip op at 9, this Court stated that, "in determining the existence of proper cause or a change of circumstances, the trial court is not necessarily required to conduct an evidentiary hearing." See also *Marik v Marik (On Remand)*, 325 Mich App 353, 363; 925 NW2d 885 (2018). In fact, this Court has stated that an evidentiary hearing need not be held even if the threshold consideration is fact-intensive. *Corporan*, 282 Mich App at 605.

In connection with her emergency motion, defendant provided translated petitions from September 2023 and October 2023 that allegedly support her assertion that plaintiff is attempting to have the Brazilian courts exercise full jurisdiction over custody and parenting time. The first petition appears largely to be an attempt by plaintiff to have his Brazilian child-support payments reduced in light of the fact that EC is in his custody a majority of the time. To the extent that plaintiff was also requesting that visitations take place exclusively in Brazil, the Michigan court clarified by way of its November 14, 2023 order that defendant's parenting time was not restricted to Brazil after December 25, 2023.

Ultimately, it was not improper for the Michigan trial court to assume that the Brazilian courts would, in the end, apply full faith and credit to its custody ruling.[3] Accordingly, we conclude that it was not against the great weight of the evidence for the trial court to conclude that defendant did not demonstrate proper cause or change or circumstances sufficient to revisit the custody decision.

## III. SPOUSAL SUPPORT AND ATTORNEY FEES

---

[3] We take judicial notice of the fact that the United States and Brazil are signatories of the International Hague Conventions. See U.S. Department of State, *Brazil* < https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/International-Parental-Child-Abduction-Country-Information/Brazil.html#:~:text=Brazil%20and%20the%20United%20States,)%20since%20December%201%2C%202003.> (accessed June 21, 2024); U.S. Department of Health and Human Services, *International Parents* <https://www.acf.hhs.gov/css/parents/help/international-parents> (accessed June 21, 2024).

## A. STANDARDS OF REVIEW

This court reviews a spousal support award for an abuse of discretion. *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. Findings of fact are reviewed for clear error. *Id*. Additionally, this Court reviews a trial court's award of attorney fees in a divorce action for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). Factual findings associated with an award of attorney fees are also reviewed for clear error. *Id*. at 700. Questions of law are reviewed de novo. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005).

## B. SPOUSAL SUPPORT

Defendant contends that the trial court abused its discretion by declining to award her spousal support. Under MCL 552.23(1),

> [u]pon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

Spousal support is designed to help "balance the incomes and needs of the parties in a way that will not impoverish either party[.]" *Woodington*, 288 Mich App at 356. Whether to award spousal support is a decision that must "be based on what is just and reasonable under the circumstances of the case." *Id*. In making its determination, the court should consider a long list of factors, including:

> (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Id*.]

Here, the court concluded that "fault" did not favor support. Evidence adduced at trial indicated that defendant mistreated plaintiff's son from a prior marriage and that she had an affair while married to plaintiff. Defendant claimed that plaintiff had also been having an affair, but the court found this allegation was not credible. The court further stated that the relatively short duration of the marriage (six years until the divorce filing) did not favor support. Additionally, after discussing plaintiff's and defendant's jobs and incomes, the court said that the parties' ability to work and their income levels "may" favor support, but noted that both parties had the ability to

work. The court concluded that the property division was irrelevant because assets in the United States had been split evenly. The court stated that the parties' ability to pay spousal support did not favor support because neither party could afford it. It also stated that the parties' present situation did not favor support. As for the needs of the parties, the court said that this factor did not favor support because defendant was supporting herself through various avenues such as family assistance, child support, and self-employment. With regard to the parties' health, the court stated that this factor did not favor support because both parties were in good health. The court also found that the prior standard of living of the parties did not favor support because they had lived relatively modestly. It stated that defendant's age and educational level further did not favor support because she was 33 years old and highly educated. Finally, the court stated that general principles of equity did not favor support.

The court's analysis was sound. Defendant again asserts that she was subject to domestic abuse, but as discussed repeatedly *supra*, the court did not find the allegations of abuse to be credible. Defendant also contends that the court was not allowed to factor in financial assistance that defendant received from family and friends, but she provides no authority for this assertion. "This Court is not required to search for authority to sustain or reject a position raised by a party without citation of authority." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008) (citation omitted). Defendant contends that she has less potential for generating income than plaintiff, but she is considerably younger than plaintiff and is highly educated, holding both a bachelor's degree and a master's degree. She freely chose to remain in the United States, stated that her chance of obtaining a green card was high, and agreed that she would likely have employment opportunities with a company that needed people who could speak English and Portuguese. Under the circumstances, no basis for reversal is apparent.

## C. ATTORNEY FEES

Defendant finally contends that the court's award of attorney fees was too low. Under the "American rule," attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract. *Id.* MCR 3.206(D) states as follows regarding domestic-relations actions:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:
>
> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

In *Reed*, 265 Mich App at 165-166, the Court stated:

> The party requesting attorney fees bears the burden of proving they were incurred and that they are reasonable. When requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services. The trial court may not award attorney fees . . . solely on the basis of what it perceives to be fair or on equitable principles. [Citations omitted.]

Here, the trial court noted that plaintiff had been ordered to pay defendant's attorney fees on an interim basis and that defendant subsequently averred that all of her attorney fees had been paid by friends, with the exception of an outstanding balance of $22,387.75. The court stated that both parties had contributed to the lengthy nature of the litigation but concluded that plaintiff had a greater ability to pay attorney fees. It ordered that plaintiff pay $11,193.88 of defendant's balance, which amounted to half of the total bill.

Defendant implies on appeal that the court should have awarded her approximately $70,000 in attorney fees. But defendant has already stated that she had paid her attorney $51,100 and that aside from $5,000 to $7,000 that she paid herself from property sales, the money came from family assistance, church assistance, and a GoFundMe internet campaign. The bulk was from GoFundMe and only approximately $22,000 in attorney fees remained to be paid.

Plaintiff was asked if he should contribute to defendant's attorney fees. He said that he had been completely transparent about his financial means and that he did not have the money to pay defendant's attorney fees because of the extensive amount he already paid to defend himself against possible criminal charges in connection with false allegations made by defendant. He also said that defendant had access to a lawyer working pro bono but chose to discontinue that service. As of March 6, 2023, plaintiff said that he was paying approximately $1,000 a month on a credit card for attorney fees. The evidence supported that plaintiff had a somewhat greater ability to pay because of his generally higher income, but it also supported that he, too, was limited in what he could afford.[4] The court's decision to "split the difference" and award defendant half of the outstanding balance was not an abuse of discretion.

### III. CONCLUSION

Defendant has failed to show that the trial court erred in its determinations regarding custody and change of domicile. She has further shown no entitlement to spousal support or a higher attorney fee award.

---

[4] Defendant refers to plaintiff earning a very high salary in 2020, but it seems apparent from context that the figure was referring to Brazilian reals, not United States dollars. Plaintiff stated that his annual Brazilian salary would be approximately $52,000 in United States dollars.

Affirmed.

/s/ Michael J. Riordan
/s/ Michelle M. Rick
/s/ Noah P. Hood